Julian A. Hertz, J.
This case was tried in this court on April 27,1973. Defendant responded to a summons charging him with improperly performing a New York State inspection of a motor vehicle on January 4,1973, in violation of subdivision (d) of section 306 of the Vehicle and Traffic Law.
It appears that the defendant operates a State-licensed motor vehicle inspection station at 148 Attorney Street in lower Manhattan, where he also does mechanical repair work.
State Trooper Charles T. Curtis testified for the People. He identified himself as a trained and certified motor vehicle inspector attached to Troop K. He stated that on the date in question he drove an unmarked 1967 Dodge sedan, a police vehicle equipped with standard plates, into the defendant’s inspection station. Shortly thereafter, and at a time agreeable to the defendant, he returned for an inspection, which then took place. Thereafter Trooper Curtis issued the subject summons charging improper inspection.
Defendant contests, raising two arguments. The first is based on his claim that there is no legal basis for the charge since the vehicle in question was exempt from inspection. In support of this claim the defendant cites People v. Conrow (68 Misc 2d 471 *74 [1971]), wherein the defendant was similarly charged, although the case there was factually different in that the defendant was not a person certified to conduct a vehicle inspection. That distinction aside, this court agrees with the decision in People v. Wehmann (70 Misc 2d 278 [1972]), a decision which is based on facts like those at bar. Town Justice Fraitcese stated (p. 279) his rejection of the conclusion of nonliability, despite misfeasance, on the theory of the exemption of police vehicles from inspection under subdivision 5 of section 308 and section 125 of the Vehicle and Traffic Law and subdivision (d) of section 79.1 and subdivisions (a) and (e) of section 79.2 of the regulations (15 NYCRR 79.1 [d]; 79.2 [a] [e]). This court concurs that" the “ status of the vehicle itself is immaterial ” and that: “ It obviously is not the intent of the section that the New York State Police should be required to enlist, from its ranks or from the public, persons with automobiles and expect those vehicles to be the tests for the enforcement of the section. When the Legislature directed the State Police to enforce the law it also tacitly directed that State Police vehicles be used for such purposes. Those sections of the Vehicle and Traffic Law which exclude police vehicles from the definition of a motor vehicle were enacted for the purpose of relieving the law enforcement authorities from the burden of registration, highway regulations, and other areas to which police vehicles are not subject.”
Defendant at bar also contends that the inspection process involves the application of expertise in carrying it out. In this connection, at trial, defendant asserted an affirmative finding with respect to the condition of the\vehicle. Indeed, the People’s witness affirmatively stated it was free from defects. The question then is whether defendant’s inspection procedure sufficed to entitle him to certify the vehicle or whether he was required to abide by the detailed procedure set forth in section 79.21 before so certifying the vehicle for use.
Turning to the testimony of the People’s witness, it appears that Trooper Curtis was present throughout the inspection. He observed the defendant proceed to check the high and low headlight beams, directional signals, and parking lights. Defendant did not use a screen or other device to establish the aim of the lights, although Trooper Curtis later saw such required equipment on the premises. Nor did defendant contradict that fact, although he did claim that he determined that the lights were properly aligned without mechanical aids.
Although the officer stated that the defendant did not open the hood of the vehicle, the defendant disputed that assertion.
*75 Defendant stated he shook the PCV valve, which was his way of determining that it was operative. He also claimed that by starting the car and moving it backwards and forwards utilizing the brakes to stop it, he discerned the acceptable condition of the brakes from the high pedal and the fact that it did not pull to the right or left. He did not, therefore, deem it necessary to pull x a wheel or to check the level of the master cylinder dual reservoirs.
With respect to toe-in wheel alignment, defendant claimed satisfaction also without the use of mechanical aids. It seems he achieved that state of mind as a result of an examination of the tires.
While Trooper Curtis referred to defendant’s failure to check windshield wipers by spraying water on the windshield, defendant explained that on operating the wipers he was satisfied as to their condition upon finding they removed dust therefrom.
At this point it is noted that subdivision (a) of section 79.21 of the regulations of the Department of Motor Vehicles specifically requires “ one wheel must be pulled for inspection of the condition of brake linings, drums, wheel cylinders and other braking mechanism or disc brake components ” (the vehicle in question was equipped with disc brakes on the front wheels)..
The manual of regulations carefully and definitively prescribes other procedures which apparently are not elective. Repeatedly, it is explicit and directory. Commencing with the introduction, it provides against operation of a vehicle unless 1 ‘ inspected in accordance with the provisions of these regulations ” and only after “ thorough inspection ”. Proceeding to section 79.8 of the regulations headed “ Duties of licensee ” it is plainly provided in paragraph (1) of subdivision (a) that the licensee issuing a certificate of inspection certifies that: “ (1) the brakes, steering mechanism, wheel alignment (toe-in and toe-out), lights and such other equipment specified by these regulations have been inspected in accordance with these regulations ” and in sudivision (b) if is provided that “ The specific duties of an official inspection station are as follows: (1) To conduct * * * a thorough and efficient inspection of any vehicle * * * in the manner prescribed by the commissioner ”,
Section 79.9 of the regulations states space prerequisites while subdivision (d) prescribes multiple equipment requirements for inspection stations including a wheel alignment indicator, headlight-test equipment and, among other things, a PCV (positive crankcase ventilation) system tester.
*76 Additional provisions of the regulations (§ 79.21) are devoted to exact procedures to be followed as to noncommercial vehicles and thereafter as to commercial vehicles. Directions for inspection and criteria requiring rejection are quite specific. In paragraph (2) of subdivision (a) the inspector must ascertain that the brake system master cylinder is full and in subdivision (c) steering, front end wear and wheel alignment must be checked, and on and on.
In sum, and while arguments may be advanced directed to particularly picayune criticisms of an inspection, should such a case be presented, it is the decision of this court that the inspection in question was materially deficient in multiple respects and that the proof of that fact on defendant’s own testimony convinces the court of his guilt beyond a reasonable doubt. It is well to add that additional fault could be assessed by reference to other aspects of the testimony, but it seems unnecessary to pursue the matter further.
It is worthy of mention that this court is not unaware of what may be thought of as the harshness of the result in this ease, considering the fact (and assuming its relevance for this discussion only) that the $3 fee which defendant may collect (§ 79.7, subd. [c]), of which he keeps only $2.75, has remained static for many years. Defendant testified that he computes his labor charge (for mechanical work wholly outside of these inspections) at $5 per hour, a rate which this court is aware is conservative indeed. Further, defendant testified that the inspection process in the case of the vehicle here in question consumed approximately 25 minutes of his time.
Though the defendant and others similarly situated may be inadequately compensated considering the fee and the time needed to inspect in accordance with prescribed procedure (estimated by defendant at more than one hour), that is a matter irrelevant to the issue here considered. It is dismissed from further consideration except that it may be said that fact may well explain the attempt to inspect in this case in a manner which does not measure up to the required standards.
Finally, this court holds that despite the fact that the vehicle subjected to inspection was, concededly, mechanically without fault, that fact did not serve to diminish defendant’s objective basis for inspection. The charge at bar is not founded on a lack of defendant’s expertise in discovering defects. Hence it does not raise the question of his vocational expertise. Bather, it is founded on his failure to follow prescribed procedure.